### ROME v. MARSH, Commandant, etc.

(District Court, D. Massachusetts. September 22, 1920.)

No. 1868.

1. **Constitutional law ⬚255—Person cannot be inducted into service by default, without reasonable notice and opportunity to appear.**

Assuming that under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k) there was power to provide by regulations for induction on default, and to punish by court-martial proceedings persons brought under the military jurisdiction in that way, due process of law, required by the Constitution, prohibits any induction by default without reasonable notice and a reasonable opportunity to appear before being defaulted.

2. **Army and navy ⬚20—Selective service regulations held inadequate to protect rights of registrants leaving country.**

The rules and regulations under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), as in force in August, 1917, did not contain adequate provisions for reasonable notice to registrants allowed to leave the country after registration to appear for physical examination and induction, and the induction by default of such a registrant not appearing was invalid.

3. **Army and navy ⬚20—Statement of director of military enrollment held to supersede notice to appear for examination.**

Where the President designated the Governors of the several states to have charge of the operation of the draft, with authority to delegate their powers, and the Governor of Massachusetts delegated his authority to a director of military enrollment, a letter from such director to a representative of a registrant, who had left the country by permission, stating that it would not be necessary for him to return until the expiration of his leave, superseded a notice from the local board previously given to appear for examination.

4. **Army and navy ⬚20—Duty of local board to advise registrant's representative to file change of address.**

Where, in response to notice to one registered under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k) to appear for physical examination, his brother explained to the chairman of the local board that he had left the country by permission of the War Department, it was the duty of the board to inform him of his rights and advise him of the necessity of filing a formal notice of change of address, if such notice were to be insisted upon, as it is the duty of administrative boards to protect the rights of individual citizens, as well as the rights of the government.

Application of Philip Rome for a writ of habeas corpus against Clarence T. Marsh, Commandant at Ft. Banks. Petitioner discharged.

A. K. Cohen and Wm. C. Rogers, both of Boston, Mass., for petitioner.

MORTON, District Judge. Habeas corpus to secure the petitioner's release from the custody of the army authorities, by whom he is now held as a deserter. The evidence was fully presented at the hearing on the petition for the writ, and by stipulation of the parties the question of discharge, the writ having issued, is to be decided upon the same evidence and agreement as to facts.

The petitioner resided in Worcester, where he was employed as a salesman by I. Rome & Son, a partnership composed of his father and his brother, wholesale dealers in and exporters of textile goods of various kinds. In 1916 the house decided to send a representative to South America, with a view to opening a branch there, if found advisable. The petitioner was selected to go. His departure was delayed for various reasons, and he was still in this country when the Selective Service Act was passed and the day appointed for registration under it arrived. He duly registered, giving his address as his father's house in Worcester, where he resided. Shortly afterwards he applied for a passport, and was informed by the State Department that he must obtain permission from the War Department to leave the country. An application was accordingly presented by him to the War Department; it stated clearly that he was liable for military service. It was granted; he undertaking to keep himself informed of his military status and to return at his own expense, if called for service. In this application he stated that he was going to Buenos Aires and that his address was in care of Thomas Cook & Son at that place. He sailed before the local boards had been organized, and at a time when there was no provision for registering a change of address with the draft tribunals.

On August 20, 1917, notice to him to appear for physical examination within seven days was sent by the local board addressed to his father's house, where it was received and turned over to his brother, who immediately went to the chairman of the local board, Mr. Hickey, and explained to him that the petitioner was then in Buenos Aires, and inquired what should be done. Mr. Hickey referred the brother to Mr. Gettemy, who was then director of military enrollment in this state. The brother thereupon wrote to Mr. Gettemy a letter, in which he said that the petitioner was in Buenos Aires on a passport and leave of absence for six months, granted by the State and War Departments, and inquired whether his brother should return at once or wait till the expiration of the six months. Mr. Gettemy replied that—

"It will not apparently be necessary for him to return to this country until the expiration of said leave, at which time he should report at once to the War Department for instructions."

The respondent criticizes the statement in the brother's letter that the petitioner was absent on leave from the War Department, but the context of the letter made it plain that the leave referred to was permission to leave the country. It is evident that Mr. Gettemy correctly understood it. The brother was neither a lawyer nor connected with the army, and undoubtedly acted in entire good faith. I see no reason whatever to doubt that the petitioner and his family acted throughout in entire good faith and without the slightest intention that he should evade his military obligations.

Mr. Gettemy's action was never communicated to the Local Board. Its chairman apparently made no minute on its records of the information which he had received from the petitioner's brother. No written statement of a change of address was filed by or on behalf of the petitioner with the local board after it was organized; but the facts

were clearly and truthfully brought to its attention, as above stated. The War Department never advised the local board of its action in permitting the registrant to leave the country.

The petitioner could not, of course, appear for examination as directed. His name was forwarded as a delinquent by the local board to the district board, without any statement of the reason why he had not responded, and was forwarded by the district board to the Adjutant General of the state, who was then in charge of the draft. The Adjutant General sent a notice to the petitioner at the Worcester address to appear within five days for induction into the service. This notice reached the brother; but, relying on the Gettemy letter, he paid no attention to it.

The petitioner was thereupon declared inducted on default before the expiration of the six months covered by the passport. On his return to this country in 1920 (he had in the meantime been establishing and managing the branch of I. Rome & Son in Buenos Aires, and his passport had been extended by the American consul there), he was arrested by the army authorities as a deserter; his trial by court-martial followed.

[1] The question is whether the petitioner has been legally inducted into the army. Assuming, as the respondent contends, that there is power under the Selective Service Act to provide by regulations for induction on default, and to punish by court-martial proceedings persons who are brought under military jurisdiction in that way, it is, I think, clear that there cannot be an induction on default, unless the person so inducted had reasonable notice and a reasonable opportunity to appear before being defaulted. This is required by the Constitution in order to constitute "due process of law," and the right to such notice and opportunity in all proceedings affecting one's liberty is a matter of the plainest and most fundamental justice.

[2] At this time the rules and regulations under the Selective Service Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k) contained no adequate provisions with respect to American citizens who, having registered, had been allowed to leave the country and were abroad. Apparently there was an oversight, due undoubtedly to the haste with which the regulations had to be prepared. The provisions allowing only five days' notice to appear for induction, and not more than seven days to appear for physical examination, applied to such persons, although they might be wholly unable to respond in such a brief interval, as well as to those in this country. Afterwards the omission was corrected, and the Adjutant General was authorized in such cases to fix a time for appearance, not earlier than ten days, and as much later as he saw fit. This change shows that the regulations under which the petitioner was inducted were recognized by the army authorities as inadequate. The regulations under which the petitioner was defaulted, being inadequate fairly to protect the rights of registrants in his situation, were on that account unreasonable, and as to them void. The default was, in my opinion, unwarranted, and the induction based upon it invalid.

[3] Upon an entirely different ground the same conclusion is reached. The time in question was near the beginning of the draft, and before the machinery to carry it out was fully perfected. The President designated the Governors of the several states to have charge of the operation of the draft within their respective states and authorized them to delegate their powers. The Governor of Massachusetts delegated his authority to Mr. Gettemy. While the powers of Mr. Gettemy as director of military enrollment are not entirely clear, I infer that he had substantially the same authority later exercised by the Adjutant General of the state. This seems to have been what Mr. Hickey understood when he referred the petitioner's brother to him. If so, Mr. Gettemy's action superseded the notice by the local board to appear for examination.

[4] It is unnecessary to decide the other questions argued. It should perhaps be observed that if the local board, in forwarding the petitioner's name as a delinquent, had stated, as it ought to have done, the reason why he was delinquent, viz. that he was out of the country, the district board might not have forwarded his name, and the Adjutant General's office would not have proceeded against him as it did.

It was not the practice of the Adjutant General's office to deal in any such peremptory and unfair way with registrants who for good reasons failed to appear. It was also the business of the local board to inform the petitioner's representative of his rights, and to advise him of the necessity of filing a formal notice of change of address, if that were to be insisted upon. Administrative boards are not simply courts hearing cases between party and party; it is their duty to see that the individual citizen receives his rights, as well as that the government receives its proper due.

The insistence on the prosecution for desertion by the army authorities after the real facts have been brought to their attention seems to me far from creditable.

Petitioner discharged.